**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

**OHIO VALLEY ENVIRONMENTAL
COALITION, INC., WEST VIRGINIA
HIGHLANDS CONSERVANCY, INC.,
and SIERRA CLUB,**

          **Plaintiffs,**

    **v.**                          **CIVIL ACTION NO.** 2:13-12063

**GARY D. BALDWIN, in his Capacity as
Trustee of the David L. Francis
Testamentary Trust,**

          **Defendant.**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL
PENALTIES**

**INTRODUCTION**

1.     This is an action for declaratory judgment and mandatory injunctive relief and for

civil penalties against Defendants for discharging pollutants in violation of the Federal Water

Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or "the

CWA") from an unpermitted point source on their property north of Rawl in Mingo County,

West Virginia.  That point source discharges into an unnamed tributary of Lick Creek of the Tug

River, which are waters of the United States.

2.     As detailed below, Plaintiffs allege that Defendants—as owners of the point

source—discharged and continue to discharge selenium—a pollutant designated as toxic by the

U.S. Environmental Protection Agency, 40 C.F.R. § 401.15—into waters of the United States

without a National Pollution Discharge Elimination System ("NPDES") Permit issued pursuant

1

to Section 402 of the Clean Water Act, 33 U.S.C. § 1342, in persistent violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311.

## JURISDICTION AND VENUE

4.      This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365 (Clean Water Act citizen suit provision).

5.      On January 28, 2013, Plaintiffs gave notice of the violations and their intent to file suit to Defendant, the successors-in-trust, the United States Environmental Protection Agency ("EPA"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

6.      More than sixty days have passed since notice was served.  Neither EPA nor WVDEP have commenced and/or diligently prosecuted a civil or criminal action to redress the violations.  Moreover, neither EPA nor WVDEP commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or a comparable state law to redress the violations prior to the issuance of the January 28, 2013 notice letter.

7.      Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the Clean Water Act violations are located in this District.

## PARTIES

8.      Defendant is a Trustee of the David L. Francis Testamentary Trust, and, hence, the legal owner of real property in Mingo County, West Virginia.

9.      Defendant is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

10.      At all relevant times, Defendant, as Trustee of the David L. Francis Testamentary Trust, is and has been the owner of a certain tract or parcel of land on Lick Creek, a tributary of

the Tug Fork of the Big Sandy River, in Mingo County, West Virginia, containing 643 acres, more or less, and on which at least one valley fill was constructed during the operation of the Sprouse Creek West Surface Mine.

11.     Plaintiff Ohio Valley Environmental Coalition (hereinafter "OVEC") is a nonprofit organization incorporated in Ohio.  Its principal place of business is in Huntington, West Virginia.  It has approximately 1,500 members.  Its mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, grassroots organizing, coalition building, leadership development, and media outreach.  OVEC has focused on water quality issues and is a leading source of information about water pollution in West Virginia.

12.     Plaintiff West Virginia Highlands Conservancy, Inc., (hereinafter "WVHC") is a nonprofit organization incorporated in West Virginia.  It has approximately 1,700 members.  It works for the conservation and wise management of West Virginia's natural resources.

13.     Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with more than 600,000 members and supporters nationwide and approximately 1,900 members who reside in West Virginia and belong to its West Virginia Chapter.  The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives.  The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in West Virginia.

14.     Plaintiffs' members suffer injuries to their aesthetic, recreational, environmental, and/or economic interests as a result of Defendants' unlawful discharges of selenium.  Plaintiffs' members fish in, swim in, hike near, observe wildlife in, photograph, and/or otherwise use the

waters affected by Defendants' discharges and are harmed by selenium that Defendants are discharging.  Plaintiffs' members refrain from those activities and/or enjoy them less because of Defendants' unlawful discharges. Plaintiffs' members are also very concerned about the impacts of pollution from Defendants' discharges on their friends and neighbors and on local wildlife.  If Defendants' unlawful discharges ceased, the harm to the interests of Plaintiffs' members could be redressed.  Injunctions and/or civil penalties would redress Plaintiffs' members' injuries by preventing and/or deterring future violations.

15.    At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5).

## STATUTORY AND REGULATORY FRAMEWORK

16.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a National Pollution Discharge Elimination System ("NPDES") Permit issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

17.    Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

18.    At all times relevant to this complaint, the State of West Virginia has been authorized by EPA to administer a NPDES program for regulating the discharges of pollutants into the waters of West Virginia.  Permits issued under this program are known as "WV/NPDES" permits.

19.    Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to

"commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."

20.    Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a), of the CWA.

21.    In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant or defendants to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1365(d).  See 33 U.S.C. § 1365(a).

22.    Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

23.    Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, the court may assess a civil penalty of $37,500 per day for each violation that occurred after January 12, 2009.  See 40 C.F.R. § 19.4.

24.    Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

## FACTS

25.    Valley fills, also known as durable rock fills or hollow fills, are a common feature

of Appalachian surface mining.

26.     Valley fills are a result of the expansion of rock that occurs when mountains are blown up.  Excess rock and soil are placed in nearby valleys, covering headwater streams and forming valley fills.

27.     Valley fills are engineered structures.  They are designed with a rock core underdrain, to direct water under the fill.  They also sometimes have drainage ditches along the sides of the fill or down the center surface.  The water percolating through the fill and draining along the sides and center are discharged at the toe of the fill as surface water.

28.     Precipitation and groundwater percolate through overburden on the mine site and valley fill, dissolving minerals in the rock, such that the water discharged out the toe of the fill may include additional pollutants.

29.     At all relevant times, Defendant has owned the surface estate of a certain tract of land designated as "Parcel No. 10" in a deed from Sycamore Coal Company to David L. Francis dated March 3, 1975.

30.     Defendant took ownership of Parcel No. 10 as Trustee of the David L. Francis Testamentary Trust upon the death of David L. Francis in or about May 1986 under the Last Will and Testament of David L. Francis.

31.     On or about December 15, 1993, the West Virginia Division of Environmental Protection issued Surface Mining Permit Number S505292 to Rawl Sales and Processing Company for the operation of the Sprouse Creek West Surface Mine on lands including Parcel No. 10 described above.

32.     During the course of its operation of the Sprouse Creek West Surface Mine, Rawl Sales and Processing Company constructed Durable Rock Fill 2 in an unnamed tributary of Lick Creek of Tug Fork, as authorized by Surface Mining Permit S505292.  Durable Rock Fill 2 is

located on Parcel 10—the 643-acre parcel of land owned by Defendant.

33.    Defendant, in his capacity as trustee, is the owner of the property on which Durable Rock Fill 2 is located.

34.    Durable rock fills, such as Durable Rock Fill 2, are constructed in streams and are engineered to convey water through underdrains, center drains, and side drains to the stream channel located at the base, or toe, of the fill.

35.    Publicly available aerial photography shows that Durable Rock Fill 2 is bisected by a center drain on its surface, which conveys surface runoff into an unnamed tributary of Lick Creek of Tug Fork.  The "as-built" drawings certified to WVDEP by Rawls Sales and Processing also show a trapezoidal center drain on the surface of Durable Rock Fill 2.

36.    Surface Mining Permit S505292 required Rawl Sales and Processing to construct a rock core underdrain at the bottom of Durable Rock Fill 2 to provide drainage through the fill into the unnamed tributary of Lick Creek.

37.    The Sprouse Creek West Surface Mine operated in high selenium coal seams such as the Coalburg, Stockton, and 5 Block.  The West Virginia Geologic and Economic Survey associates these seams with high concentrations of selenium the WVDEP associates them with a reasonable potential to lead to violations of West Virginia Water Quality Standards for selenium.

38.    While the Sprouse Creek West Surface Mine was in operation, its discharges into waters of the United States were regulated by WV/NPDES Permit WV1013416.

39.    WVDEP granted Phase 3 bond release for Surface Mine Permit S505292 on or about November 9, 2010.  All coal removal activities have ceased in that permitted area, and the mine site has been reclaimed.

40.    On or about January 28, 2011, WVDEP released WV/NPDES Permit WV1013416—the only Clean Water Act permit authorizing discharges of pollutants from the

Sprouse Creek West Surface Mine into waters of the United States.

41.     On December 12, 2012, a water sample taken just downstream of the discharge from Durable Rock Fill 2 in the unnamed tributary of Lick Creek, just above its confluence with Lick Creek, revealed a selenium concentration in the unnamed tributary of 2.4 ug/L.

42.     The sampling location coordinates are approximately 37° 40' 14.84" N, 82° 12' 24.20" W.

43.     Durable Rock Fill 2 of the Sprouse Creek West Surface Mine lies upstream approximately 0.25 miles from the sampling location.

44.     The only potential source of selenium into the unnamed tributary of Lick Creek is Durable Rock Fill 2.  Accordingly, Plaintiffs allege on information and belief that Durable Rock Fill 2 is discharging selenium into an unnamed tributary of Lick Creek.

45.     Durable Rock Fill 2 is a point source as that term is used in the context of the CWA.  33 U.S.C. § 1362(14).

46.     Durable Rock Fill 2 conveys discharges of groundwater and surface water into an unnamed tributary of Lick Creek at or near its toe.

47.     The unnamed tributary of Lick Creek in which Durable Rock Fill 2 is constructed is a water of the United States because of its hydrologic connection to Lick Creek, Tug Fork, and the Big Sandy River.

48.     Selenium is a toxic pollutant under the CWA.  40 C.F.R. § 401.15.

49.     Neither Defendant nor any other entity possesses a permit to discharge selenium from Durable Rock Fill 2 into an unnamed tributary of Lick Creek.

50.     In light of the nature of selenium discharges from surface mines and in the absence of any evidence that Defendant or any other party has made any efforts to prevent future similar selenium-laden discharges from Durable Rock Fill 2, Plaintiffs allege that Defendant has

committed additional unpermitted discharges since December 2012, and is in continuing and ongoing violation of the Clean Water Act.

51.     Plaintiffs sent a notice of intent letter (hereinafter, "NOI"), postmarked on January 28, 2013, to the Trustees of the David L. Francis Testamentary Trust named in the Last Will and Testament of David L. Francis, and to Defendant as a successor in trust, notifying them that their unpermitted discharges of selenium violate the Clean Water Act.

52.     The NOI also notified Defendant of Plaintiffs' intent to sue Defendant for those violations at the end of the 60-day period required by statute.

53.     The NOI was sent by certified mail, return receipt requested, to the following persons: Trustees of the David L. Francis Trust; Secretary Randy Huffman, WVDEP; Shawn M. Garvin, Regional Administrator of EPA Region III; and Lisa P. Jackson, Administrator of EPA.

## FIRST CLAIM FOR RELIEF
(Clean Water Act Violations Related to Unpermitted Selenium Discharges)

54.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 53 supra.

55.     Defendant's wastewater discharges identified in the above paragraphs are discharges from a point source or sources into navigable waters of the United States within the meaning of Section 301 of the Clean Water Act, which prohibits the discharge of any pollutant by any person, except in compliance with a permit.  33 U.S.C. § 1311.

56.     Defendant does not hold any WV/NPDES Permits that authorize the discharge of selenium from Durable Rock Fill 2.

57.     Under Section 505(f) of the Clean Water Act, 33 U.S.C. § 1365(f), the prohibition against unpermitted discharges under Section 301 is an "effluent standard or limitation" subject to enforcement through the citizen suit provision at Section 505(a)(1) of the Act.  33 U.S.C. § 1365(a)(1).

58.     As established by Plaintiffs' sampling, Defendant discharged selenium into an unnamed tributary of Lick Creek in violation of Section 301(a) in December 2012.

59.     On information and belief, Plaintiffs allege that Defendant is in continuing and/or intermittent violation of the Clean Water Act as a result of his ongoing selenium discharges because Defendant has taken no meaningful action to eradicate the underlying cause of the discharges or to obtain a permit for the discharges.

60.     Unless enjoined, Defendant will remain in continuing or intermittent violation of the Clean Water Act.

61.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Defendant is liable for civil penalties of up to $37,500 per day of violation for its violations of Section 301 of the CWA, 33 U.S.C. § 1311.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this court enter an Order:

(1).     Declaring that Defendant has violated and is in continuing violation of the Clean Water Act;

(2).     Enjoining Defendant from allowing further unpermitted discharges of selenium;

(3).     Ordering Defendant to pay appropriate civil penalties up to $37,500 per day for each CWA violation;

(5).     Ordering Defendant to conduct monitoring and sampling to determine the environmental effects of its violations, to remedy and repair environmental contamination and/or degradation caused by its violations, and restore the environment to its prior uncontaminated condition;

(6).     Awarding Plaintiffs' attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

(7).    Granting other such relief as the Court deems just and proper.

Respectfully submitted,

**/s/ Derek O. Teaney**

DEREK O. TEANEY (W.Va. Bar No. 10223)
JOSEPH M. LOVETT (W.Va. Bar No. 6926)
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901
(304) 793-9007

Counsel for Plaintiffs